UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

V.                                                                      DOCKET NO. 04-10113

Carlos Barrientos

## MEMORANDUM
## REQUEST FOR A DOWNWARD DEPARTURE

**NOW COMES**, the defendant in the above-entitled matter and requests this honorable court grant a downward departure.

Mr. Barrientos is a 31-year-old black male who suffered from an abusive childhood. His father was a heroin addict and was not often around during Mr. Barrientos' formative years. His father routinely beat his mother and when Mr. Barrientos would interfere, the violence was turned toward him.

Years of both physical and mental abuse plus a lack of education, drug addiction and dyslexia have contributed to Mr. Barrientos' current problems. Mr. Barrientos would like to earn his GED. In 1994, while living at the Miller House he started to learn how to read and write. He made remarkable progress there. He has visited schools in order to help prevent young people from committing the same mistakes he has made. Mr. Barrientos had to stop his education because the Essex County Correctional Facility does not have the appropriate programming available to him. The Defendant requests that he be allowed to return to Miller House.

I. **THE DEFENDANT REQUESTS A DOWNWARD DEPARTURE BASED ON A COMBINATION OF MITIGATING FACTORS**

The Defendant has pleaded guilty and accepted responsibility for his actions. However, in addition to sparing the court and government the time and resources of a trial, the Defendant is also sincerely remorseful and contrite for his involvement in the instant offense. He is embarrassed and ashamed of his decisions and conduct and is dedicated to never again becoming involved in illegal conduct. The Defendant desires to seek drug rehabilitation while incarcerated and to continue his education with the result being the earning of his GED. Additionally, the Defendant's extreme childhood abuse and his lack of education warrant departure consideration. The defendant also wishes to continue his community outreach to young people.

**The defendant's Extreme Childhood Abuse Caused Mental and Emotional Conditions That Contributed to the Defendant's Commission of the Offense.**

The Defendant had such a traumatic childhood that this specific offender characteristic distinguishes him from the "heartland" cases allowing for a downward departure. U.S.S.G. § 5K2.0 allows a court to depart from the guidelines when an offender characteristic is present to such an unusual degree and distinguishes the case from the "heartland" cases in such a way that it is important to the statutory purposes of sentencing. See U.S.S.G. § 5K2.0. Again, the Defendant's traumatic childhood presents such an extraordinary degree of mental and physical abuse in childhood as to distinguish this characteristic from the all too common childhood of a drug addicted parent.

Mr. Barrientos had no positive male role model during his childhood. What he witnessed molded his character and his place in society. The extreme childhood abuse caused mental and

emotional conditions that contributed to the defendant's commission of illegal actions. Therefore, a downward departure should be granted.

Although this Circuit has not directly ruled on this issue, several circuits have held that Section 5H1.3 allows for a downward departure "in cases of extreme childhood abuse." *United States v. Rivera,* 192 F.3d 81, 84 (2nd Cir. 1999), cert. denied sub nom., *Mendez v. United States*, 528 U.S. 1129, 145 L. Ed. 2d 836, 120 S. Ct. 965 (2000) (citing *United States v. Pullen*, 89 F.3d 368, 372 (7th Cir. 1996), cert. denied, 519 U.S. 1066, 136 L. Ed. 2d 627, 117 S. Ct. 706 (1997); *United States v. Vela,* 927 F.2d 197, 199 (5th Cir.), cert. denied, 502 U.S. 875, 116 L. Ed. 2d 172, 112 S. Ct. 214 (1991); *United States v. Clark*, 8 F.3d 839, 845-46 (D.C. Cir. 1993); *United States v. Roe,* 976 F.2d 1216, 1218 (9th Cir. 1992); *United States v. Deigert*, 916 F.2d 916, 919 (4th Cir. 1990))

In *Roe*, the Ninth Circuit held that, because "the Sentencing Commission expressly considered the impact of [mental and emotional] conditions in formulating section 5H1.3, ... the psychological effects of childhood abuse may only be considered as a basis for departure in extraordinary circumstances." 976 F.2d at 1218. Applying that standard, the Ninth Circuit found that the district court had abused its discretion for failing to depart where the defendant's abusive upbringing included living with a drug-addicted father, who subjected the defendant to physical abuse and mental abuse.

Moreover, several courts have held that a downward departure based upon extreme childhood abuse is not foreclosed by Section 5H1.12 of the Guidelines. Section 5H1.12 states that "lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds for imposing a sentence outside the applicable guideline range."

In *Pullen*, the Seventh Circuit observed that "the 'similar circumstances' to which Section 5H1.12 refers might not be thought to encompass childhood abuse by a parent, which is not all that similar to the sort of parental neglect, rather than abuse, conjured up by the term 'lack of guidance.' 89 F.3d at 371.

Similarly, in *United States v. Ayers*, 971 F. Supp. 1197 (N.D. Ill. 1997), the court found that the "'similar circumstances' to which Section 5H1.12 refers do not encompass the extreme psychological and physical abuse which Ayers suffered as a child. Therefore, Section 5H1.12 of the Guidelines does not preclude a downward departure in this case." Id. at 1200.

In *United States v. Browning*, 252 F.3d 1153 (10th Cir. 2001), the Tenth Circuit was confronted with the issue of whether the sentencing court erred in declining to grant a downward departure based upon childhood abuse. The Tenth Circuit first explained that, as a general matter, Section 5H1.12 prohibits departures for lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing. The Tenth Circuit then cited *Ayers* and *Rivera,* and stated that **Ayers** "persuasively distinguishes 'exceptionally cruel ... psychological and emotional abuse' constituting 'a form of sadistic torture' from the generalized lack of guidance or neglect that § 5H1.12 prohibits as a basis for departure." Id. at 1160. The Tenth Circuit, however, found that it did not have jurisdiction to review the sentencing court's refusal to grant a downward departure, as the sentencing court did not state that it did not have the authority to depart. The Tenth Circuit specifically noted, however, "the analytical soundness of *Ayers, Rivera*, and similar cases." Id.

Finally, the Second Circuit concluded that, "in extraordinary circumstances (the parameters of which we leave to future development), district courts may properly grant a downward departure on the ground that extreme childhood abuse caused mental and emotional

conditions that contributed to the defendant's commission of the offense." *United States v. Rivera*, 192 F.3d 81,85 (2nd Cir. 1999). The Second Circuit recognized that "it seems beyond question that abuse suffered during childhood – at some level of severity – can impair a person's mental and emotional conditions ...victims of [child] abuse frequently experience profound feelings of inadequacy, isolation, confusion, low self-esteem, and guilt" and that "[e]ach of these effects constitutes either a mental or emotional condition." See *Rivera*, 192 F.3d at 85.

The Defendant's case presents precisely the type of extreme factors that warrant a downward departure. The Defendant never had a chance to be a productive member of society. By all accounts, the Defendant had an extremely difficult childhood suffering from physical and mental abuse at the hands of a drug addicted father. These events transformed the Defendant and made it impossible to live a normal life.

The Defendant's tragic childhood presents the type of situation that should be addressed by this Court. Just like the situation described in Rivera, the Defendant's catastrophic and destructive childhood unquestionably led to deep seated emotional and mental problems that directly resulted in the Defendant's involvement in the instant offense. Under these circumstances, the Court should depart downward.

### C.    The Intensive Confinement Center (ICC) Program

The Defendant requests that, pursuant to 18 U.S.C. § 4046, this Honorable Court recommends that the Defendant be placed in a rehabilitation program where he can continue his education and his detoxification. The Defendant's participation in such a program would aid in his rehabilitation and his successful return to society upon completion of his sentence.

Title 18 U.S.C. § 4046 authorizes the Bureau of Prisons to place certain inmates who volunteer into a special form of incarceration called the Intensive Program. The ICC is a

six-month program that includes physical training, hard labor, job training, educational programs, and drug and alcohol counseling. See § 4046(b)(1) and (2). The Defendant's participation in the ICC will benefit both the Defendant and society. Successful com pletion of the ICC program will give the Defendant the skills he needs to live as a law abiding, productive member of society and gives the Defendant the best chance of substantive rehabilitation.

According to program statement 5390.08, the ICC program is a specialized program combining features of a military boot camp with traditional correctional features of prison, followed by extended participation in community-based programs. An ICC is a single gender, minimum-security institution designed to house either male or female adult inmates. Inmates who meet ICC eligibility criteria are placed in the program for six months.

The ICC program includes: strict discipline and a daily regimen of physical conditioning, military drill and ceremony, labor-intensive work assignments, adult literacy program, vocational training, drug and alcohol counseling, and stress management programs. The program involves a rigorous, six-month, 17-hour daily curriculum, and permits little free time. However, the payoff is that upon successful completion of the six-month program, an inmate is eligible to serve the remainder of the sentence in a community-based program and is eligible to have his sentence reduced by six additional months.

One method of being designated to the ICC program is through the sentencing court making a recommendation that a defendant be placed in the program. The district court's recommendation for a defendant to participate in the ICC program is an important consideration, which the BOP takes into account when designating a defendant to the program. PS 5390.08(9)(a). Upon the court's recommendation, the BOP will then determine if the individual is eligible.

The requirements for eligibility are:

(1) The defendant must be serving a sentence of 60 months or less. An inmate serving sentences of more than 12 but not more than 30 months are ordinarily placed in ICCs at initial designation. Inmates serving sentences of m  ore than 30, but not more than 60 months, can be placed in an ICC upon redesignation, which occurs once the inmate is within 24 months of his projected release date.

(2) The defendant must be serving his or her first period of incarceration or has a minor history of prior incarcerations.

(3) The defendant is not serving a term of imprisonment for a crime of violence, or a crime involving the carrying, possession, or use of a firearm, or involves sex ual abuse offenses committed upon children.

(4) The defendant is appropriate for minimum-security status.

(5) The defendant is physically and mentally capable of participating in the program.

(6) The defendant must volunteer to participate in the program. See BOP Program Statement 5390.08, § 524.31.

In the instant case, the Defendant should be permitted to participate in the ICC program. The Defendant is a non-violent drug offender facing his first period of incarceration. He has pleaded guilty and accepted responsibility for his crime and is exceptionally remorseful for his involvement in the illegal drug trade. Further, the Defendant's involvement in the instant offense stems primarily from his own drug use, lack of discipline, and poor decision making. Thus, the Defendant's situation is precisely the type of case that was envisioned when Congress created the ICC program The ICC philosophy and structure mesh perfectly with what the Defendant needs in order to turn the Defendant's involvement in the instant offense into a valuable lesson that will remain with the Defendant for the rest of his life. The military activities, hard work, 17 hour days, and counseling will do just that. The Defendant needs vocational skills so he can obtain gainful employment upon his release. He needs parenting programs so that he can learn how to be a better father to his children. And, the Defendant needs substance abuse counseling so that

he can make a clean break from the drug culture and drug use that contributed to the Defendant's involvement in the instant case. The end result of the program will be a newfound maturity*See* PS 5390.08(7)(b).

The only issue holding the Defendant back from participating in the program is the guideline range set forth in the PSI. As indicated above, inmates serving sentences of more than 30, but not more than 60 months, can be placed in an ICC upon redesignation, which occurs once the inmate is within 24 months of his projected release date. The PSI currently recommends a guideline range of 60 to 71 months. Thus, with even a 61-month sentence, he would be disqualified from participation.

Under the circumstances, the Defendant respectfully requests that after considering the government's substantial assistance motion, this Honorable Court sentences the Defendant to no higher than 60 months imprisonment so that he will be eligible for to enter the ICC program.

                    Respectfully submitted by,
                    Carlos Barrientos
                    By his Attorney,

                    /s/Lawrence P. Novak
                    Lawrence P. Novak
                    BBO#548589
                    235 Candy Lane
                    Brockton, MA 02301
                    508-581-8400

Date:   September 20, 2005

## CERTIFICATE OF SERVICE

I, Attorney Lawrence P. Novak, certify that I served a copy of the aforementioned docum ent, via U.S. Mail postage pre-paid to:

David G. Tobin
United States Attorney's Office
1 Courthouse Way
Suite 9200
Boston, MA 02210

Patrick M. Hamilton
United States Attorney's Office
1 Courthouse Way
Suite 9200
Boston, MA 02210

United States Attorney's Office
1 Courthouse Way
Suite 9200
Boston, MA 02210