UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Crim. No. 04-10113-DPW |
| ) | |
| CARLOS BARRIENTOS, ) | |
| Defendant.  ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

The United States of America, by and through the undersigned Assistant U.S. Attorneys, hereby files its Opposition to the *Motion to Suppress Search and Memorandum in Support* filed by Defendant Carlos Barrientos ("Defendant") on December 29, 2005. For the reasons set forth below, the search and seizure of the firearm and ammunition located in Defendant's apartment was lawful under the Forth Amendment. Defendant's motion should therefore be denied.

## I.    BACKGROUND

On April 8, 2004, the grand jury returned an indictment charging the defendant with two counts of distribution of cocaine base in a playground zone in violation of 21 U.S.C. §§ 841(a)(1) and 860(a). Docket No. 1. On the same day, this Court issued an arrest warrant for the defendant. Docket Nos. 3 and 15. On April 15, 2004, state and federal law enforcement officers assigned to the Youth Violence Strike Force (Y.V.S.F.) arrested the defendant pursuant to the warrant at his residence at 77 Ellington Street, Apartment 2, Roxbury, Massachusetts. During the arrest of the defendant, law enforcement officers recovered a Colt, model Python, .357 revolver (serial Number 19260E), and sixty-five rounds of various caliber ammunition. The revolver and ammunition are the subject of the defendant's motion to suppress.

On April 15, 2004, at approximately 6:00 a.m., Boston Police Officer Joshua Cummings and other officers assigned to the Y.V.S.F. positioned themselves at the front door of the defendant's residence at 77 Ellington Street, Apartment 2, Roxbury, Massachusetts. Other officers secured the rear of the building. Officer Cummings knocked on the door. A female asked, "Who is it?" Officer Cummings responded that it was the Boston Police and asked to speak with the woman. The woman opened the door, identified herself as Tina Blount and stated that it was her apartment. Officer Cummings asked if Carlos Barrientos was present. Ms. Blount asked why and Officer Cummings replied that they had a warrant for his arrest. Ms. Blount hesitated momentarily and then nodded her head. Officer Cummings asked where Barrientos was located and Ms. Blount said he was in the last bedroom on the right. See Boston Police Report of Officer Joshua Cummings.

The law enforcement officers at the front door entered the apartment. Officer Cummings, Suffolk County Deputy Sheriff Stanley Wojtkonski, and United States Deputy Marshals Kevin Neal and John Saccardo proceeded down the hallway in the direction of the bedroom specified by Ms. Blount. As they approached the bedroom, Officer Cummings announced "Boston Police" and that they were there to make an arrest. The officers entered the bedroom and found the defendant on the bed. A crumplled-up comforter was beside the defendant on the bed. Officer Cummings ordered the defendant to show his hands and stand up. The defendant complied. At this time, Deputy Marshall Saccardo, who had previously left the bedroom to open the backdoor to allow another officer into the apartment, called for Officer Cummings from another room. Officer Cummings asked Deputy Sheriff Wojtkonski and Deputy Marshall Neal to secure the defendant and then left the bedroom. See Officer Cummings Report

Deputy Marshal Neal approached the defendant, who was standing beside the bed and turned the defendant around in order to place hand restraints on the defendant. The defendant was

positioned so close to the bed that his legs were either touching the edge of the mattress of within close proximity to the mattress. While Deputy Marshal Neal was securing the defendant, Deputy Sheriff Wojtkonski quickly attempted to check under the bed and then checked the top of the bed for weapons. Deputy Sheriff Wojtkonski lifted a comforter that lay crumpled on the bed and noticed that the comforter was unusually heavy. He found a green nylon bag within the crumpled comforter. The bag was closed by a zipper, but Deputy Sheriff Wojtkonski noticed that the contents of the green nylon bag made an impression on the exterior of the bag. Deputy Sheriff Wojtkonski observed what appeared to him to be the shape of a handgun barrel on the side of the bag. He unzipped the bag and found a handgun. Deputy Sheriff Wojtkonski estimated that about ten seconds had elapsed from the time Officer Cummings asked him and Deputy Marshal Neal to secure the defendant and the discovery of the weapon.[1]

## II.    ARGUMENT

According to Defendant, the Court should suppress the firearm and ammunition seized in this matter because they were "obtained through an illegal search contrary to the Fourth Amendment." *Deft's Motion* at 3. In support of this argument, Defendant contends that "the weapon and ammunition were not in his immediate control upon being arrested" and that "no legitimate exception existed for a warrantless search." *Id.* For all of the following reasons, however, the government respectfully disagrees. The search and seizure in this matter was entirely proper as incident to Defendant's valid arrest and is *supported* by the case law cited by the

---

[1] The factual information in this section of the government's brief was obtained from Officer Cummings' report (*Exhibit A*), notes complied by United States Deputy Marshal Neal (*Exhibit B*), ATF Special Agent Thomas Crowley's report (*Exhibit C*), an interview of Deputy Marshal Neal conducted on January 3, 2006, and an interview of Deputy Sheriff Wojtkonski conducted on January 4, 2006. The above reference interviews were conducted by the below-listed Assistant United States Attorneys.

Defendant. *See infra*. The search and seizure was also valid pursuant to the "plain view/plain feel" and "exigent circumstances" doctrines. *See infra*. Defendant's motion should therefore be denied.

### A.     Valid Search and Seizure Incident to Defendant's Lawful Arrest

The Court should deny Defendant's motion on the ground that the search and seizure in this matter was entirely proper as incident to Defendant's lawful arrest.[2] It is well settled "that a search incident to a valid arrest may be made without procurance of a warrant." *United States v. Cruz Jimenez*, 894 F.2d 1, 7 (1st Cir. 1990). As noted in the Defendant's motion, the United States Supreme Court addressed the proper scope of a search incident to arrest in *Chimel v. California*, 395 U.S. 752 (1969). In doing so, the Court recognized that:

> [t]he right without a search warrant contemporaneously to search persons lawfully arrested ... and to search the place where the arrest is made in order to find and seize things connected with the crime ... as well as weapons and other things to effect an escape from custody, is not to be doubted.

*Chimel,* 395 U.S. at 756 (emphasis added). The Court ultimately held that, in addition to searching the arrestee's *person* for such items,

> When an arrest is made .... it is entirely reasonable for the arresting officer to search .... the area into which an arrestee might reach in order to grab a weapon or evidentiary items.... A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Chimel,* 395 U.S. at 763 (emphasis added).

Contrary to the Defendant's suggestion otherwise, *Chimel* supports the officers' search and seizure of the firearm and ammunition at issue in this matter. In *Chimel*, the defendant challenged

---

[2] Defendant does not challenge the validity of his arrest, which, as noted in the Defendant's motion, was made pursuant to a valid arrest warrant. *See Deft's Motion* at 1.

4

the validity of a search conducted incident to his arrest for burglary of a coin shop, during which officers searched his "entire" house and seized numerous coins and other evidence of the burglary. Although the Court invalidated the search, its decision was based on the fact that the officers searched "the entire three-bedroom house, including the attic, the garage, and a small workshop" incident to the defendant's arrest. *Chimel*, 395 U.S. at 754. Because the search went "far beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him," the search was unreasonable. No such facts exist in the instant case. Instead, as set forth in the summary of the facts above and as reflected in *Exhibits A-C*, the search and seizure of Defendant's firearm and ammunition took place contemporaneously with his arrest and within feet of the area where Defendant was being secured. Such facts fall squarely within the scope of a valid search incident to arrest as defined by the Supreme Court in *Chimel*.

Defendant's reliance on *Preston v. United States*, 376 U.S. 364 (1964) and *United States v. Paradis*, 351 F.3d 21 (1st Cir. 2003) is also misplaced. According to Defendant, this Court should suppress the firearm and ammunition because of "[t]he timing of Barrientos' arrest compared to the search and discovery of [the] evidence." *Deft's Motion* at 2. Defendant argues that firearm "was not in his immediate control upon being arrested" and that its seizure "occurred after he was secured and all potential danger to the officers had been eliminated." *Id.* He concludes that the search and seizure was invalid under *Preston* and *Paradis*.

This argument fails for several reasons. First, it is based on a false recitation of several material facts. Specifically, according to the Defendant's affidavit, (i) his firearm and ammunition "was in a closed bag located inside a drawer at the foot of [his] bed," which was "on the opposite side of where [he] stood up when ordered to do so." *Deft's Aff.* at ¶ 5 (emphasis added). Although not clear, Defendant's affidavit also suggests that the search and seizure took place after he was "led

5

into the front room with [his] hands strapped together behind [his] back." *Id.* at ¶ 4. These "facts," however, contradict all of the relevant police reports (at *Exhibits A-C*) and all of the testimony that the government expects to elicit at the suppression hearing. According to these sources, the nylon bag containing the firearm and ammunition fell out of the comforter on Defendant's bed when Suffolk County Deputy Sheriff Stanley Wojtkonski moved the comforter while conducting a "protective sweep <u>in the areas within Barrientos' immediate reach</u>" <u>while another officer was in the process of securing the Defendant</u> pursuant to the arrest warrant. *See Exhibits A-C.* Defendant's motion therefore fails on the facts.

Second, both of the cases upon which Defendant bases his "timing" argument – *Preston* and *Paradis* – are distinguishable from the instant case. In *Preston,* the Supreme Court held that a search of the defendants' motor vehicle, which took place <u>after</u> (i) the defendants were arrested and taken to the police station and (ii) the vehicle was towed to a garage, was too remote in time and place to be incidental to the arrests. *Preston*, 376 U.S. at 367. Clearly, this case is easily and significantly distinguishable from this case. Unlike the substantial lapse in time and place in *Preston*, here, Deputy Sheriff Wotjoski discovered the firearm <u>while another officer was in the process of apprehending Defendant and within feet of the area where this arrest was taking place</u>.

Defendant's reliance on *Paradis* is similarly misplaced. In *Paradis,* the court invalidated an extensive search of the defendant's apartment as outside the scope of the "protective sweep doctrine" where the sweep took place <u>after</u> (i) the defendant had been removed and taken into custody and (ii) "the police had already been through the entire apartment" and determined that no other individuals posing a danger were in the apartment. *Paradis*, 351 F.3d at 29-30. Again, the facts of the instant case are clearly distinguishable. Here, unlike the officers in *Paradis*, the officers in this matter had neither: (i) removed Defendant from the apartment before the challenged search took place, nor (ii) already been through the entire apartment. In addition, *Paradis* involved the

6

"protective sweep" doctrine, as opposed to the "search incident to lawful arrest" doctrine.

Finally, in addition to falling squarely within the proper scope of a "search incident to lawful arrest" as defined by *Chimel* (see discussion above), the search and seizure of Defendant's firearm is supported by *Chimel*'s progeny. As stated by the Supreme Court in *New York v. Belton*, 453 U.S. 454 (1981), "a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested <u>and of the immediately surrounding area</u>." *Belton*, 453 U.S. at 457 (emphasis added). The *Belton* Court held that this area includes a search of the passenger compartment of a vehicle <u>and</u> the contents of a any container found within that compartment. Belton, 453 U.S. at 460. In reaching this holding, the Court stated as follows:

> While the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. <u>Our reading of the cases suggests the generalization</u> that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact <u>generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m]</u>. In order to establish the workable rule this category of cases requires, we read *Chimel*'s definition of the limits of the area that may be searched in light of that generalization.

*Belton*, 453 U.S. 460 (emphasis added). Importantly (with respect to the cloth bag containing the firearm and ammunition at issue here), the Court also held that:

> It follows from this conclusion that <u>police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within the reach of the arrestee, so also will containers</u> in it be within his reach. Such a <u>container may, of course, be searched wether it is open or closed</u>, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee might have. Thus, while the Court in *Chimel* held that the police could not search all the drawers in an arrestee's house simply because the police had arrested him at home, the Court noted that drawers within an arrestee's reach could be searched because of the danger their contents might pose to the police.

*Id*. at 460-461 (emphasis added).

The First Circuit has embraced the holding in *Belton*, including the Court's use of the generalization that items are within a defendant's "immediate control" and therefore subject to a "search incident to arrest" if they are "generally, *even if not inevitably*, within 'the *area* into which an arrestee *might* reach in order to grab a weapon or evidentiary [item]." *See United States v. Doward*, 41 F.3d 789, 792 (1st Cir. 1994) (emphasis in original). In upholding a warrantless search of the hatch area of the vehicle in which the defendant was arrested, including the seizure of a firearm found within a partially zipped suitcase in the hatch area, the First Circuit noted as follows:

> *Belton* upheld a warrantless search of the entire 'passenger compartment' against a claim that all its occupants were outside the vehicle at the time of the search – thus, as a practical matter, no longer within the 'reach' of any weapons, evidence or contraband located within the passenger compartment.... The *Belton* Court explicitly predicated its bright-line rule on 'the generalization that articles inside the ... compartment ... are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach ....

*Doward*, 41 F.3d at 792 (quoting *Belton*, 453 U.S. at 460). The First Circuit rejected Doward's argument that the search "was not sufficiently contemporaneous with his arrest because the handgun was seized *after* he had been removed from the scene, at a time when there was no conceivable risk that he could have reached it." *Id* at 791. The First Circuit concluded that:

> The *Belton* majority's circumspect use of the discrete phrase '<u>contemporaneous incident of the arrest</u>,' rather than the less expansive phrase '<u>contemporaneous with that arrest</u>' – as Doward would have us read it – <u>plainly implies a greater temporal leeway between the custodial arrest and the search than Doward advocates</u>. Moreover, the temporal limitation urged by Doward would undermine *Belton*'s bright-line rule by requiring courts to second-guess the security assessments made by law enforcement officers at the scene.

*Doward*, 41 F.3d at 793 (emphasis added). *See also United States v. Edwards*, 415 U.S. 800 (1974) (upholding search of defendant's clothing conducted 10 hours after arrest); *United States v. Cruz Jimenez,* 894 F.2d 1 (1st Cir. 1990) (upholding search of motel room incident to arrest because "the search began contemporaneously with the arrest, and never went beyond <u>an area in the immediate control of the defendant, that is, the room in which the search occurred</u>") (emphasis added); *United*

8

*States v. Sheehan,* 583 F.2d 30 (1st Cir. 1978) (upholding seizure of item in defendant's wallet incident to his arrest); *United States v. Eatherton*, 519 F.2d 603 (1st Cir. 1975) (holding agents could properly search contents of briefcase defendant was carrying incident to his lawful arrest); *United States v. DeLeo*, 422 F.2d 487 (1st Cir. 1970) ("[w]hile the legal arrest of a person should not destroy the privacy of his premises, it does – <u>for at least a reasonable time and to a reasonable extent</u> – take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence") (emphasis added).

In light of the foregoing, the validity of the search and seizure at issue in this matter is well-grounded in controlling case law. Application of the instant material facts to *Chimel* and its progeny compels only one conclusion: The search and seizure of Defendant's firearm and ammunition was properly performed incident to Defendant's valid arrest. Defendant's motion to suppress should therefore be denied.

    **B.**    **Defendant's Motion Should Also be Denied Under the "Plain View/ Plain Feel" Doctrine**

The search of the green nylon bag found on the bed beside the defendant was also justified under the "plain view" doctrine. The requirements for a plain view seizure are: (1) the officer must lawfully be in the position from which he observed the object; (2) its incriminating character must be immediately apparent when seen; and (3) the officer must have a lawful right of access to the object. *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971) (plurality opinion); *Minnesota v. Dickerson,* 508 U.S. 366, 375 (1993). No warrant is required to search a container if its illicit contents are in plain view or may be inferred from its outward characteristics. *Arkansas v. Sanders*, 442 U.S. 753, 764-65 n. 13 (1979); *United States v. Taylor*, 162 F.3d 12, 20 (1st. Cir. 1998); *United states v. Ford,* 56 F.3d 265, 270 (D.C. Cir. 1995) (plain view seizure of gun clip valid because discovered during protective sweep of premises during arrest).

Deputy Sheriff Wojtkonski was lawfully present in the defendant's bedroom assisting in the execution of the arrest warrant issued by this Court. Deputy Sheriff Wojtkonski was permitted to secure the room and look for weapons or other instrumentalities that the defendant might use to harm the officers lawfully present in the bedroom. During the course of "pat frisking" the bed looking for weapons, Deputy Sheriff Wojtkonski noticed an unusually heavy object within the crumpled comforter. As he moved the comforter, he noticed the green nylon bag. The bag was packed tightly and a protrusion on the side of the bag revealed the shape of a gun barrel. Deputy Wojtkonski, who has significant familiarity with weapons, immediately recognized the shape on the side of the bag as that of a gun barrel and had probable cause to believe that the bag contained a handgun. *See United States v. Weems*, 322 F.3d 18, 24 (1st Cir. 2003) (plain view seizure of firearm valid because police lawfully executing valid arrest warrant); *United States v. Flores*, 149 F.3d 1272, 1278 (10th Cir. 1998) (seizure of drugs in plain view valid because discovered during lawful protective sweep incident to execution of arrest warrant).

### III.  CONCLUSION

For all of the foregoing reasons, Defendant Carlos Barrientos' Motion to Suppress the firearm and ammunition seized in this matter should be denied.

Dated:  January 4, 2006                          Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    */s/ Lisa M. Asiaf*
DAVID G. TOBIN
LISA M. ASIAF
Assistant U.S. Attorneys
Tel:  (617) 748-3100

**CERTIFICATE OF SERVICE**

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 4, 2006.

               */s/ Lisa M. Asiaf*
               LISA M. ASIAF